## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | ) | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| VERIFIED IDENTITY PASS, INC. | ) | |
| | ) | |
| Debtor | ) | Case No. 09-17086-SMB |
| | ) | |

## ORDER AUTHORIZING SALE OF CERTAIN OF THE DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS AND FOR RELATED RELIEF

Verified Identity Pass, Inc., the debtor and debtor-in-possession in the above captioned case (the "Debtor"), having filed the *Debtor's Motion (A) to Authorize Debtor to Effectuate Asset Purchase Agreement with Henry, Inc.; (B) to Authorize Sale Free and Clear of Liens, Claims and Interest; and (C) for Related Relief* (the "Sale Motion") and contemplating the sale of its assets pursuant to a certain Asset Purchase Agreement to Henry, Inc. ("Henry"); and an auction having been conducted on February 1, 2010 pursuant to and in accordance with the terms of the Order Establishing Bid Procedures (the "Bid Procedures Order"); and as a result of the competitive bidding process, Alclear, LLC having submitted a bid letter and asset purchase agreement as modified and attached hereto as **Exhibit "A"** (the "APA") and having been declared the successful bidder at the auction (the "Buyer"); and proper notice of the Sale Motion[1] having been given; and the Court having considered the Sale Motion and all pleadings associated with that motion; and upon the arguments of counsel and the evidence presented at the hearings on the Sale Motion (the "Sale Hearing"); and after due deliberation and sufficient cause theretofore:

## IT IS HEREBY FOUND AND DETERMINED THAT:

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the APA.

A.     The Court has jurisdiction to grant the relief requested in the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the Sale Motion constitutes a core proceeding within the meaning of 28 U.S.C. § 157(b).

B.     Venue of this case in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.     The statutory predicates for the relief requested herein include sections 105(a), 363 and 365 of the Bankruptcy Code, Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), Local Bankruptcy Rules 6004, 6006 and 9013-1.

D.     The findings and conclusions set forth in this order (the "Order") constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

E.     To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

F.     The Buyer has submitted the highest and best offer for the Acquired Assets.

G.     Due and adequate notice was provided of the Sale Motion, the Sale Hearing, the right to submit counteroffers to the offer contained in the APA. Service and notice of the Sale Motion, the Sale Hearing and the right to submit counteroffers to the offer contained in the APA complied with §102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, and 9006. No other or further notice is required.

H.     A reasonable opportunity has been afforded to any interested party to make a higher or otherwise better offer to purchase the Acquired Assets and to assert an objection to or be heard regarding the relief requested in the Sale Motion, including approval of the APA.

I.      The Debtor has marketed the Acquired Assets and conducted the sale process in compliance with, and has complied with all of its obligations under, the Bid Procedures Order. The Debtor has properly exercised its reasonable business judgment in determining to sell substantially all of the Debtor's Acquired Assets and in determining that the Buyer's offer represents the highest and best offer for the Acquired Assets.

J.      The approval of the Sale Motion and the APA is in the best interests of the Debtor's estate, its creditors and other parties in interest in that:

    (i)     The APA was negotiated, proposed and entered into in good faith, from arm's-length bargaining positions by the Debtor and the Buyer;

    (ii)    The Debtor had the opportunity to contract with any other party interested in purchasing the Acquired Assets to be sold pursuant to the APA;

    (iii)   The bidding procedures approved in connection with the sale of the Acquired Assets enabled the Debtor to solicit higher and better offers for the Acquired Assets, and provided for adequate notice and an opportunity to be heard in connection with the sale of the Acquired Assets;

    (iv)    The Buyer is a third-party purchaser unrelated to the Debtor, and is not a continuation of the Debtor's corporation; and

    (v)     The Purchase Price is fair. ~~and reasonably equivalent value for the purchase of the Acquired Assets.~~ **SMB 4/16/10**

K.      The sale of the Acquired Assets and other transactions contemplated by the APA must be approved and consummated promptly in order to preserve the value of the Acquired Assets.

L.      The Buyer is a good faith purchaser of the Acquired Assets under section 363(m) of the Bankruptcy Code and, as such, is entitled to the protections afforded thereby. The Buyer and the Debtor have not engaged in any conduct that would cause or permit the APA and the transactions contemplated thereby to be avoided under section 363(n) of the Bankruptcy Code.

M. The APA contemplates that, except for the Assumed Liabilities, consummation of the sale does not subject the Buyer to any debts, liabilities, taxes, commitments, responsibilities, or claims of any kind against the Debtor or its property, whether known or unknown, contingent or otherwise, whether existing as of the date of this order or arising thereafter.

N. The Debtor may sell the Acquired Assets free and clear of all liens, claims, taxes, encumbrances and interests, other than the Assumed Liabilities because the Lenders have consented to the sale, satisfying subsection **SMB 4/16/10 (2)** ~~s (1) through (5)~~ of section 363(f) of the Bankruptcy Code.

O. The APA contemplates and the Debtor has requested that, except with respect to the Assumed Liabilities, the transfer of the Acquired Assets to Buyer will not subject the Buyer to any liability whatsoever with respect to or arising out of or related to the operation of the Debtor's business prior to the Closing or by reason of such transfer under the laws of the United States, based, directly or indirectly, on any theory of law or equity including, without limitation, any theory of equitable subordination or successor or transferee liability.

P. All other findings made by the Court during the Sale Hearing are incorporated herein by reference.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT,**

1. Objections:

   a. Delta Air Lines, Inc. ("Delta"), City and County of San Francisco ("San Francisco") and L-1 Identity Solutions Operating Company ("L-1"), each has filed a limited objection to the Sale Motion asserting that any alleged agreement, contract or lease between them and the Debtor (collectively "Agreements") has expired or has been terminated or otherwise has never

existed or become operative and, as such, may not be assumed and assigned. The Debtor has represented that it is not seeking to assume or assign any alleged agreement, contract or lease it may have or may have had with Delta, San Francisco, and L-1 pursuant to the Sale Motion or the APA. Therefore, the objection of Delta, San Francisco and L-1 are overruled, without prejudice to the rights of Delta, San Francisco and L-1 should the Debtor at a later date seek to assume and assign any alleged contract, agreement or lease between it and those entities. Nothing in the APA or this Order shall be deemed a finding, holding, determination, or constitute any form of estoppel, waiver or res judicata that: (i) the Agreements are property of the Debtor's estate pursuant to Section 541 of the Bankruptcy Code, (ii) the Agreements may be lawfully transferred to the Buyer or Henry pursuant to Section 363(b) of the Bankruptcy Code or (iii) the Debtor may assume and assign the Agreements to the Buyer or Henry pursuant to Section 365 of the Bankruptcy Code (any such proposed assumption and assignment shall be on notice and after a hearing).

b.    Steven W. Perkins and others, on behalf of themselves and similarly situated members, have filed an objection to the sale, asserting that the Debtor may not sell or transfer certain biometric information obtained by the Debtor in connection with a member's application for a "clear card." For the reasons set forth on the record, that objection is overruled.

c.      The Objection by Henry is overruled for the reasons set forth on the record and herein.

d.      The Greater Orlando Aviation Authority ("<u>GOAA</u>") filed an objection (ecf # 69) (the "<u>GOAA Sale Objection</u>") to the Sale Motion.  GOAA subsequently filed a limited objection (ecf # 112) (the "<u>GOAA Limited Sale Order Objection</u>") to the entry of a proposed sale order granting the Sale Motion, to which the Debtor filed a response (ecf # 118).  The GOAA Sale Objection and the GOAA Limited Sale Order Objection are hereby fully and finally resolved as set forth below (collectively all such provisions shall be referred to as the "<u>GOAA Settlement Provisions</u>"):

      i.      <u>Effectiveness of the GOAA Settlement Provisions</u>.  The GOAA Settlement Provisions are subject to, and will not become effective until, each of the following conditions has been completely and fully satisfied:  (i) the Closing (as defined in the APA); (ii) GOAA's receipt of the Settlement Payment (hereinafter defined) in good funds; and (iii) the Debtor providing written instructions, which instructions shall be agreed to by GOAA, to Lockheed Martin to transfer to GOAA all biographic, biometric and subscription related information for all Orlando Owned Customers (hereinafter defined) to GOAA in the same manner and format as Customer information for non-Orlando Owned Customers is delivered to the Buyer

(collectively, (i), (ii), and (iii) shall be referred to as the "GOAA Settlement Conditions" and the day all of the GOAA Settlement Conditions have been completely and fully satisfied shall be referred to as the "GOAA Settlement Provisions Effective Date").  In the event the GOAA Settlement Provisions Effective Date does not occur on or before April 23, 2010, nothing contained in the GOAA Settlement Provisions and this Order shall be deemed (1) a finding, holding, judgment, determination, or constitute any form of estoppel, waiver or res judicata (i) with respect to the ownership interest of the Authority Owned Information (as defined in the GOAA Sale Objection) and the Orlando Owned Equipment (hereinafter defined), (ii) that the Authority Owned Information and the Orlando Owned Equipment may be lawfully transferred to the Buyer pursuant to Section 363(b) of the Bankruptcy Code and (iii) that the Debtor may assume and assign the Authority Contracts (hereinafter defined) to the Buyer pursuant to Section 365 of the Bankruptcy Code and (2) a waiver of any claims or causes of action or an admission of liability by any party hereto, including with respect to any and all issues raised in the GOAA Sale Objection and GOAA Limited Sale Order Objection, and, in such event, all rights

of the parties shall be preserved and restored to the status quo ante existing prior to the entry of this Order. Notwithstanding anything in the APA or this Order to the contrary, neither the Debtor nor the Buyer shall send any notices to any Customers until the occurrence of the GOAA Settlement Provisions Effective Date.

ii.    <u>The GOAA Agreements</u>.  The Debtor acknowledges and agrees the (i) *Purchasing Proposal 12-05, Private Sector Known Traveler Program, at Orlando International Airport* (together with eight subsequent addenda, the "<u>GOAA Contract</u>") and (ii) the *Space/Use Agreement by and between the Greater Orlando Aviation Authority and Verified Identity Pass, Inc.* (including any and all attachments, the "<u>GOAA Lease</u>" and collectively with the GOAA Contract and any and all other contracts by and between the Debtor and GOAA, the "<u>GOAA Contracts</u>") were terminated prior to the Petition Date and therefore, incapable of assumption by the Debtor.

iii.    <u>Ownership of RT-Orlando Customers</u>.  Notwithstanding anything in the APA or this Order to the contrary, including, but not limited to, the definition of "Customer" and "Customer Data" in the APA, the definition of "Acquired Assets" in the APA, Section 5.2 of the APA and

the language of paragraphs 4, 5, 9, 12, and 15 of this Order, "Customer," "Customer Data," and "Acquired Assets" shall not include any and all applicant and enrollee lists, data and information for those Customers coded in the Debtor's databases, including, but not limited to, databases maintained by Lockheed Martin, as "RT-Orlando," as "Active" or "Expired" as set forth on the chart attached hereto as **Exhibit "B"** (collectively, the "Orlando Owned Customers").  For the avoidance of doubt, the aggregate number of "Active" and "Expired" Customers coded as RT-Orlando equals 35,642 Customers.  The Debtor, for itself and its estate, the Lenders (as defined in the APA) and the Buyer hereby each acknowledge and agree that (i) upon the occurrence of the GOAA Settlement Provisions Effective Date, the Orlando Owned Customers are, and thereafter shall be, owned by, and be the property of, GOAA free and clear of any and all liens, claims, encumbrances and interests.

iv.   Ownership of Orlando Equipment.  Notwithstanding anything in the APA or this Order to the contrary, including, but not limited to, the definition of "Acquired Assets" in the APA, "Acquired Assets" shall not include any and all equipment, such as kiosks, supplies, data, and

other items, used in connection with the Registered Traveler Program operated and owned by the Debtor at the Orlando International Airport (the "Orlando Owned Equipment"). The Debtor represents and warrants to GOAA that it does not own any software or technology relating to the Registered Traveler Program operated and owned by the Debtor at the Orlando International Airport. The Debtor, for itself and its estate, the Lenders and the Buyer hereby each acknowledge and agree that upon the occurrence of the GOAA Settlement Provisions Effective Date, the Orlando Owned Equipment is, and thereafter shall be, owned by, and be the property of, GOAA, free and clear of any and all liens, claims, encumbrances and interests.

v.   Consideration.  In consideration for, among other things, resolving the issues raised in the GOAA Sale Objection and GOAA Limited Sale Order Objection, the Debtor shall pay to GOAA $500,000.00 in good funds (the "Settlement Payment") on the Closing Date by wire transfer to an account to be designated by GOAA within two (2) business days after GOAA receives notice of entry of this Order.

vi.   Transfer and Treatment of Customer Data.  Upon receipt of instructions from the Debtor, Lockheed Martin is

authorized and directed to transfer any and all applicant and enrollee lists, data and information for the Orlando Owned Customers to GOAA, at the Debtor's sole cost and expense, as soon as possible but in no event later than the date the Debtor or Lockheed Martin transfers Customer Data to the Buyer.  To the extent GOAA complies with the procedures for Customer notification outlined by the Privacy Ombudsman, GOAA shall have no liability for the transfer of Orlando Owned Customer information.  GOAA shall have no further privacy obligations to the Debtor.

vii. <u>Mutual Releases</u>.  Upon the GOAA Settlement Provisions Effective Date, the Debtor, its estate and the Debtor's official committee of unsecured creditors (the "<u>Committee</u>"), on the one hand, and GOAA on the other hand, each for themselves and their respective heirs, assigns, successors and representatives, do hereby remise and forever discharge each other and their respective predecessors, successors, affiliated companies, parents and direct and indirect subsidiaries and, solely in their representative capacities, their respective agents, servants, employees, officers, directors, managers, stockholders, members, insurers, assigns, successors, clients and attorneys, from any and all manner of action, rights of

action, claims, liens, remedies or causes of action, including but not limited to Article 5 causes of action under the Bankruptcy Code, of whatever nature whether known or unknown which each now has or which it or their respective heirs, assigns or representatives may have or hereafter acquire for any and all damages of any kind or nature, causes, costs, expenses, loss of past, present and future earnings, reimbursements, subrogation, indemnity, and contribution, from the beginning of time through the GOAA Settlement Provisions Effective Date as such relates to the operation of the Registered Traveler Program in Orlando; provided, however, that nothing herein shall be deemed a release of any and all manner of action, rights of action, claims, liens, remedies or causes of action, of whatever nature ,whether known or unknown, held by GOAA or the Debtor against any third parties, including but not limited to, Lockheed Martin and Palm Coast Data. For the avoidance of doubt, GOAA hereby agrees that any proof of claim it filed against the Debtor or any claim scheduled by the Debtor for GOAA shall be deemed disallowed.

e.     The Committee filed a limited objection to the Sale Motion, which has been resolved pursuant to this Order.

2.      All Customer information for Customers set forth on the chart attached hereto as Exhibit "B" under the columns "Cancelled," "Expired Suspended," "Inactive" or "Pending Payment" has been destroyed.  If Customer information still exists for "Cancelled," "Expired Suspended," "Inactive" or "Pending Payment" Customers coded as RT-Orlando, then all data and information for those Customers shall be deemed Orlando Owned Customers and transferred to GOAA as set forth herein free and clear of any and all liens, claims, encumbrances and interests.

3.      The Sale Motion is granted as set forth herein.  All parties-in-interest have had the opportunity to object to the relief requested in the Sale Motion.  Except as set forth in the preceding paragraph of this Order, to the extent that objections to the Sale Motion or the relief requested in the Sale Motion have not been withdrawn, waived or settled, such objections are overruled on their merits for the reasons set forth herein and on the record.

4.      The APA as modified herein is hereby approved.  Pursuant to section 363(b) of the Bankruptcy Code, the Debtor is hereby authorized and directed to:  (a) sell the Acquired Assets to the Buyer on the terms and subject to the conditions set forth in the APA and this Order, (b) execute any and all additional conveyances, assignments, agreements, instruments, amendments, schedules and other documents, and (c) do all other things and take all further actions as may be necessary or appropriate for the purpose of performing its obligations under the APA and this Order.  The Debtor is hereby authorized, without further order of this Court, to sell the assets to Henry, as the second highest and best bidder at the auction if the Debtor does not close on the sale with the Buyer.  In the event the Debtor sells the Acquired Assets to Henry, as the second highest bidder, (a) Henry and the Debtor shall file a revised asset purchase agreement with the Court reflecting all the terms and conditions of Henry's second highest bid,

(b) such revised asset purchase agreement shall thereafter be the "APA" under this Order, and (c) Henry thereafter shall be deemed to be the "Buyer" under this Order and Henry's bid and APA shall be entitled and subject to all of the rights, duties, obligations and protections of the Buyer under this Order, provided however, this Order shall govern to the extent there are any inconsistencies between the terms of this Order and the Henry bid or the Henry APA. Upon entry of this Order, Henry is relieved of its obligations to remain Backup Bidder.

5.      The Acquired Assets shall be sold pursuant to section 363 of the Bankruptcy Code free and clear of all liens, claims, taxes, encumbrances and interests other than the Assumed Liabilities.  This Order is and shall be effective as a determination that, on the Closing, all liens, claims, taxes, encumbrances and interests existing on the Acquired Assets prior to the Closing have been unconditionally released from the Acquired Assets.  All liens (other than as to Assumed Liabilities) shall attach to the proceeds of the sale, with the same validity, extent, and priority as such liens had immediately prior to the sale (without prejudice to the rights, claims, defenses, offsets, demands and objections, if any, of the Debtor and all interested parties with respect to, among other things, the validity, extent, and priority of such liens).

6.      The transfer of the Acquired Assets (a) shall constitute legal, valid, and effective transfers of property of the Debtor's estate to the Buyer, and (b) shall vest in the Buyer the Debtor's right, title, and interest in the Acquired Assets free and clear of all liens, claims, encumbrances and interests other than those relating to the Assumed Liabilities.  The Debtor is authorized to transfer, to the fullest extent permitted by law, all governmental permits and licenses currently issued to the Debtor to the Buyer.

7.      The Debtor and the Buyer shall be entitled to the protections provided under section 363(m) of the Bankruptcy Code.

8. The consideration provided by the Buyer for the Acquired Assets under the APA is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code. The Buyer is not an "Insider" of the Debtor as defined in the Bankruptcy Code section 101(31).

9. Except for the Assumed Liabilities and as expressly set forth in the APA, all persons and entities holding liens, claims, encumbrances or interests against the Debtor or the Acquired Assets of any kind and nature whatsoever, hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing such liens, claims, encumbrances and interests against the Buyer, its successors or assigns, its properties, or the Acquired Assets with respect to any lien, claim, encumbrances or interest of any kind or nature whatsoever such person or entity had, has, or may have against or in the Debtor or the Acquired Assets **SMB 4/16/10 arising prior to the Closing**. ~~Following the Closing, no holder of a lien, claim encumbrance or interest against the Debtor or in the Acquired Assets shall interfere with Buyer's title to or use and enjoyment of the Acquired Assets based on or related to such lien, claim, encumbrance or interest~~.

10. Except for the Assumed Liabilities and as expressly set forth in the APA, the Buyer is not assuming nor shall it in any way whatsoever be liable or responsible, as a successor or otherwise, for any debts, liabilities, obligations, taxes, commitments or responsibilities of the Debtor or any of its predecessors, affiliates, shareholders, directors, officers, or employees or for any claims, debts, liabilities, obligations, taxes, commitments, responsibilities, liens, encumbrances or interests in any way whatsoever relating to or arising from the Acquired Assets, or the Debtor's operations or use or ownership of the Acquired Assets, arising prior to consummation of the transactions contemplated by the APA. The Buyer shall not have any successor or vicarious liabilities of any kind or character whether known or unknown or existing

as of the Closing, whether fixed or contingent, with respect to the Debtor or any debts, claims, taxes, or obligations of the Debtor arising prior to the Closing.

11.     This Order shall be binding upon and govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Acquired Assets.  Upon closing of the sale of the Acquired Assets, the Buyer is authorized to execute such documents and take all other actions as may be necessary or appropriate to release any lien, claim, tax obligation, encumbrance or interest against the Acquired Assets, other than those relating to Assumed Liabilities, as such liens, claims, tax obligation, encumbrances or interests may have been recorded or may otherwise exist.

12.     The Buyer may purchase the Customer Data of each Customer and assume the related obligations unless a Customer expressly notifies the Debtor that it does not consent to such a transfer.  In connection therewith, the Buyer (i) will offer a credit to each Customer of such number of months equal to the number of months that remained in that Customer's contract after June 24, 2009, and (ii) will not charge any such Customer for use of Buyer's service until such Customer accepts a plan of service offered by the Buyer.  Should any Customer expressly notify the Debtor that it does not consent to such a transfer, the Debtor will destroy the Customer Data related to such Customer 30 days after the opt-out deadline, unless prior to the date of

destruction the Buyer obtains the affirmative consent of the Customer to transfer his or her Customer Data, then such Customer Data shall be transferred immediately to Buyer. Any entity in possession of any such Customer Data is hereby authorized and directed to transfer such Customer Data to Buyer and Buyer shall be responsible for the reasonable and documented costs of such transfer or destruction of such Customer Data in accordance with the APA. Except as otherwise provided herein, any person or entity receiving a transfer of Customer Data shall comply with the Privacy Ombudsman's recommendations annexed hereto as **Exhibit "C."** If Henry is the Buyer, Exhibit "C" shall be modified to the mutual satisfaction of Henry and the Privacy Ombudsman. The sale of the Customer Data shall comply with the Privacy Ombudsman's recommendations annexed hereto as Exhibit "C." Nothing herein shall create any liability for the Buyer as a result of any actions or omissions by the Debtor or the Debtor's Data Custodian, Lockheed Martin, up to the date of entry of this Order.

13. **SMB 4/16/10** ~~The Buyer does not constitute a successor to the Debtor or its estate. The Sale does not constitute a consolidation, merger or de facto merger of the Buyer and the Debtor or its estates. By entering into the transaction, the Buyer is not merely a continuation of the Debtor or its estates, there is not substantial continuity between the Buyer and the Debtor and there is no continuity of enterprise between the Debtor and the Buyer~~.

14. So long as the APA is not terminated, all persons and entities, including the Second Highest Bidder and any of its affiliates, successors or assigns, shall not use any confidential information of the Seller obtained during due diligence or in connection with the bidding process in violation of any confidentiality or nondisclosure agreement with the Debtor, including as provided in the Letter of Intent by and between the Debtor and Henry dated September 4, 2009.

15.     All entities that are presently, or on the Closing may be, in possession of some or all of the Acquired Assets are hereby directed to surrender possession of said Acquired Assets to the Buyer on the Closing.

16.     This Order shall be effective and enforceable immediately upon entry, shall not be subject to any stay of enforcement, including any stay provided by Bankruptcy Rules 6004 and 6006.  The provisions of this Order shall be self-executing.

17.     The APA and any related agreements, documents or instruments may be modified, amended or supplemented by the parties thereto in accordance with the terms of such documents without further order of the Court, provided that any such modifications, amendments or supplements are (a) neither material nor adverse to the Debtor or its bankruptcy estate, and (b) either (i) on notice to the affected parties and following a hearing in accordance with the Bankruptcy Code and Bankruptcy Rules, or (ii) do not affect any parties other than the parties expressly agreeing to the relevant agreement, document or instrument being modified, amended or supplemented.

18.     Upon Closing, pursuant to the Bid Procedures Order and the APA, the confidentiality agreement among the Debtor and the Second Highest Bidder is hereby assigned to Buyer and Buyer shall succeed to all rights of the Debtor contained therein.

19.     This Court shall retain   **SMB 4/16/10**   ~~exclusive~~ jurisdiction (a) to interpret and enforce the provisions of this Order, (b) to interpret and enforce the APA, any amendments, waivers and consents to or under the APA, and each of the agreements executed in connection with the APA, (c) to compel delivery of the Acquired Assets to the Buyer, (d) to protect the Buyer against any liens in the Acquired Assets, (e) to compel delivery of the Purchase Price, (f) to interpret, implement and enforce the provisions of this Order and (g) resolve any issues in

connection with the GOAA Settlement Provisions and (h) to hear and determine any and all disputes between the Debtor and/or Buyer arising out of or relating to this Order and the APA; provided, however, that in the event the Court abstains from exercising or declines to exercise such jurisdiction or is without jurisdiction with respect to the APA or this Order, such abstention, refusal, or lack of jurisdiction shall have no effect upon, and shall not control, prohibit, or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.

20. The provisions of this Order are nonseverable and mutually dependent.

21. The terms and provisions of the APA and this Order shall be binding on and inure to the benefit of the Buyer, the Debtor and its estate and creditors and their respective affiliates, successors, assigns, shareholders, directors, officers and employees including but not limited to any chapter 7 trustee that may be appointed in the Debtor's bankruptcy case and shall be binding upon any affiliate third party and all persons asserting a lien, claim, encumbrance or interest in the Debtor's estate or any of the Acquired Assets.

22. Each and every federal, state and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA and this Order.

23. The failure specifically to include any particular provisions of the APA in this Order shall not diminish or impair the efficacy of such provisions, it being the intent of the Court that the APA be approved in its entirety, provided, however, that this Order shall govern to the extent there are any inconsistencies between the terms of this Order and the APA.

24. Solely to the extent the Buyer is Alclear, the APA is hereby modified as follows:

a. "Acquired Assets" provided for in Schedule 1 of the APA does not include any claims Seller may have against third parties relating to any Excluded Asset, except for claims Seller or Seller's estate may have against L-1, including Chapter 5 avoidance actions and any other claims, provided L-1 actually withdraws and waives any prepetition unsecured claims against the Debtor and its Estate in accordance with and subject to all of the terms and conditions set forth in the letter from Sheppard Mullin Richter & Hampton, LLP (as L-1's counsel) to Akin Gump Strauss Hauer & Feld LLP (as Alclear's counsel), dated February 24, 2010 (the "L-1 Letter"). For the avoidance of any doubt, "Acquired Assets" does not include (i) avoidance or recovery actions under sections 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code, New York Debtor Creditor Law or any other equivalent state law in any state or country (except such claims against L-1 provided L-1 actually withdraws and waives any prepetition unsecured claims against the Debtor and its Estate in accordance with and subject to all of the terms and conditions set forth in the L-1 Letter); (ii) any and all claims and rights to payment related to any of the Seller's rights under all insurance policies, including without limitation director and officer and employment practices liability insurance policies; (iii) any and all claims of Seller against any of the Seller's directors, officers, former employees or insiders arising prior to the Closing; (iv) any and all claims against the Lenders, including without limitation those relating to the validity, perfection or amount of any of the Lenders' alleged

prepetition liens and claims, except such claims arising under the Asset Purchase Agreement between Verified Identity Pass, Inc. and Alclear, LLC dated January 27, 2010, as modified; (v) any rights of set-off, recoupment or otherwise that may be asserted as an objection to any claim against the Seller or its estate, including without limitation those asserted by the Lenders, except as conveyed under the APA; (vi) any and all claim, right or interest of the Seller in or to any refund, rebate, abatement or other recovery for taxes, together with any interest due thereon or penalty rebate arising therefrom, relating to, or arising out of, the Seller's ownership of the Purchased Assets or operations of the Seller's business prior to the Closing; and (vii) any and all other claims, causes of action, and rights to payment against a third party related to the Excluded Assets as the term is defined in the APA (except such claims against L-1, provided L-1 actually withdraws and waives any prepetition unsecured claims against the Debtor and its Estate in accordance with and subject to all of the terms and conditions set forth in the L-1 Letter).

b.      Upon the closing of the sale to Buyer, provided the Buyer is Alclear, pursuant to and subject to all of the terms and conditions set forth in the L-1 Letter, L-1 withdraws and waives any prepetition unsecured claims against the Debtor and its Estate.

c.      In connection with any negotiations that Buyer may have with HHS that result in an agreement pursuant to which a payment is made with respect to such party's claims against the Debtor's estate, Buyer shall use

reasonable efforts to obtain a waiver or release of all or a portion of such

claim as applicable, that HHS may have against the Debtor or its Estate.

25.     Upon the entry of the Order, the Buyer shall deposit into escrow the sum of

$5,820,000 being the cash portion of the purchase price less the Deposit (the "Cash Proceeds").

26.     At the Closing, the Cash Proceeds and other consideration received by the Debtor

under the APA shall be held by the Debtor as (a) property of the Debtor's Estate subject to the

Secured Party's lien and (b) shall constitute the Secured Party's collateral, each only to the extent

not avoided or otherwise modified or effected by a final order.

27.     The Committee is hereby granted standing to pursue any objection, file any

motion of any kind or commence an adversary proceeding challenging the Lenders' liens or

asserting any claims against the Lenders or any Acquired Assets which the Lenders assert a lien

upon (collectively, an "Objection").

28.     Subject to paragraph 25 and 26, the Cash Proceeds and other consideration

received by the Debtor under the APA shall be held as property of the Debtor's estate by the

Debtor and (i) the Cash Proceeds less Bidding Incentives and (ii) other consideration received by

the Debtor under the APA shall not be released to the Lenders unless and until the earlier of (a)

one day after a certificate of "no-objection" being filed with the Court by counsel to the Lenders,

certifying that the Committee has not filed an objection to the Secured Party's lien within thirty

(30) days of the entry of this Order, or (b) further order of this Court.

29.     At the Closing to the Buyer, the Henry deposit of $50,000 and the Termination

Fee of $120,000 shall be paid to Henry, without prejudice to Henry's right to seek an additional

termination fee and expense reimbursement.  Henry shall submit to counsel for the Debtor with

copy to counsel for the Committee and counsel for the Lenders a request for Expense

Reimbursement of up to $150,000. The Debtor, the Committee, and the Lenders shall advise

Henry in writing within ten (10) days of receipt of the request for Expense Reimbursement

whether there is an objection and provide the basis for such objection. If Henry has not received

an objection in writing at the end of the ten (10) day period, the Debtor shall reimburse Henry for

its requested expenses up to $150,000 in accordance with the Bid Procedures Order within two

(2) business days following the expiration of the ten (10) day period. If there is an objection to

Henry's Expense Reimbursement request that cannot be resolved, Henry shall file with the Court

a motion seeking allowance of its Expense Reimbursement.

Dated: April 16, 2010

                            **/s/   STUART M. BERNSTEIN**
                            HONORABLE STUART M. BERNSTEIN
                            UNITED STATES BANKRUPTCY JUDGE

**Issued at 10:14 a.m.**

558211